IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BREELAND,<br>Plaintiff<br><br>v.<br><br>NURSE WANDA W. and GLORIA GIBBS,<br>Defendants | Case No. 1:17-cv-281<br><br>MARK R. HORNAK<br>CHIEF UNITED STATES DISTRICT JUDGE<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>ORDER ON ECF NO. 72 |

Plaintiff's Motion to Ask Courts to Proceed with this Civil Action (72) is DENIED as premature. On January 15, 2020, the undersigned Magistrate Judge filed a Report and Recommendation (71) on Defendants' Motion to Dismiss (63) Plaintiff's Amended Complaint. The Report and Recommendation is currently pending before Chief U.S. District Judge Mark R. Hornak. Plaintiff's current motion indicates that he may not have received a copy of the undersigned's Report and Recommendation, although a copy was mailed to Plaintiff at his address of record on January 15, 2020. To ensure that Plaintiff has a full opportunity to review the Report and Recommendation and consider whether to file Objections to the Report and Recommendation, the Court is mailing a second copy of the Report and Recommendation to Plaintiff with this Order. The Court is also *sua sponte* extending the time by which any party may file Objections to the Report and Recommendation by fourteen (14) days. Objections are now due on February 14, 2020. Any party opposing Objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(6)(2). Failure to file timely Objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

Dated: January 31, 2020

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BREELAND,<br>Plaintiff<br><br>v.<br><br>NURSE WANDA W. and GLORIA GIBBS,<br>Defendants | Case No. 1:17-cv-281<br><br>MARK R. HORNAK<br>CHIEF UNITED STATES DISTRICT JUDGE<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>REPORT AND RECOMMENDATION |

I. Recommendation

It is respectfully recommended that the Court GRANT the Motion to Dismiss [ECF No.63] filed on behalf of Defendants Gloria Gibbs and Nurse Wanda W.

II. Report

　　A.　Relevant Procedural History

Plaintiff Joseph Breeland (Breeland), an individual in the custody of the Pennsylvania Department of Corrections, commenced this action pursuant to 42 U.S.C. §1983 to recover damages based upon alleged delays and deficiencies in the medical care he received following an ankle injury he sustained at the State Correctional Institution at Albion, Pennsylvania (SCI-Albion). Breeland's original Complaint (ECF No. 4) named two defendants: Wexford Health Care Services (Wexford) and "Jane Doe," a nurse employed in the medical department of SCI-Albion. On January 14, 2019, Breeland voluntarily dismissed his claims against Wexford and, on April 2, 2019, he substituted Gloria Gibbs for Jane Doe. ECF Nos. 43, 48. On April 15, 2019, Breeland filed a Second Amended Complaint (SAC), which added "Nurse Wanda W." (Wanda W.) as a second individual defendant. ECF No. 50. On July 29, 2019, both remaining defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).

1

ECF Nos. 63, 64. Breeland filed a brief in opposition to the motion on August 19, 2019. ECF No. 66. The motion is ripe for decision.

B.     Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). In reviewing a Rule 12(b)(6) motion, the Court conducts a two-part analysis. First, the Court separates the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court "may disregard any legal conclusions." *Id.* Second, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court, however, need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Ultimately, a complaint must allege facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Because Breeland is proceeding pro se, however, his pleadings are held to a "less stringent standard[] than formal pleadings drafted by lawyers." *Stevens v. Dickey*, 2019 WL 4749979, *1 (W.D. Pa. Sept. 30, 2019) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). This means that "[i]f the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence

2

construction, or litigant's unfamiliarity with pleading requirements." *Id.* (citing *Boag v. MacDougall*, 454 U.S. 364 (1982)). With these standards in mind, the Court turns to the allegations of the Second Amended Complaint.

    C.    Factual Allegations of the SAC

The SAC, which is the operative pleading in this matter, alleges that Breeland injured his ankle on June 1, 2017, while he was playing basketball at SCI-Albion. The injury occurred when his ankle "popped, causing severe pain and swelling." ECF No. 50, ¶ 8. He identifies the time of the injury as approximately 2:30 pm and alleges that unknown corrections officers, who had apparently learned of the injury and notified medical personnel, relayed a message from the medical department that "he had to wait until he got back to his unit to be seen." *Id.*, ¶9. According to Breeland, this meant he would have "to wait until 3:00 pm when yard was terminated." *Id.* Breeland, according to the SAC, then "hopped to his unit…and showed the Sgt. his ankle who immediately called medical and told medical that [Breeland] needed to be seen due to his ankle looking very bad." *Id.*, ¶10. In response, unnamed medical personnel advised the sergeant that Breeland "would have to wait until count cleared," approximately 4:30 pm, to be seen. *Id.*, ¶11. After hopping to his cell on the top tier of the prison and awaiting the completion of count, Correction Officer Sullivan advised Breeland that "medical said he had to wait until 6:00 pm" to be seen. *Id.*, ¶12. This delay forced Breeland "to hop to chow and back with the help of another inmate." *Id.*, ¶13. After dinner, Breeland hopped back down the stairs and proceeded to the medical department. *Id.*, ¶14. By this point, according to the SAC, Breeland was in so much pain that he forgot to bring his identification card with him to the medical department. As a result, he was sent back to his cell to retrieve his identification. Upon returning to the medical department, however, he was told that he was late and had missed his appointment. *Id.*, ¶¶15-16.

Later that evening, Breeland was walking down the stairs in response to a summons from a corrections officer when he experienced pain shoot through his ankle and up his leg. The sudden,

3

severe pain caused Breeland to fall down the stairs. *Id.*, ¶17. This incident apparently prompted a call to medical because the SAC acknowledges that Gibbs and Wanda W. responded to the scene. This is the SAC's first mention by name of these defendants having personal involvement with Breeland. The SAC identifies Gibbs as being "responsible to responding to medical emergencies on June 1" and alleges that she and Wanda W. saw Breeland following his fall. According to the SAC, they advised Breeland to "stop playing, get up and walk." *Id.*, 18. Thereafter, however, Breeland was placed in a wheelchair and escorted to his unit where he was placed onto a "vehical (sic) and taken to medical." *Id.*, ¶19. Gibbs saw Breeland in medical, took pictures of his ankle, placed him in the infirmary, and provided him with ice. *Id.*, ¶21. The following morning, Breeland was seen by an unidentified medical doctor, given pain pills, an ACE bandage wrap, and crutches, and sent back to his cell block with 30-day bottom bunk status. *Id.*, ¶22. Breeland was also seen by a physical therapist, although the SAC does not specify when this occurred. *Id.*, ¶24. The SAC alleges no further involvement on the part of Gibbs or Wanda W. after June 2, 2017. The SAC notes that Breeland was subsequently transferred from SCI-Albion to SCI-Somerset and from there to SCI-Forest. *Id.*, ¶25. Other than alleging that he has sustained "injuries that cannot be fixed anymore" (*Id.*, ¶27), the SAC provides no additional information concerning the precise nature of the ankle injury Breeland sustained (e.g. sprain, fracture, etc.) or any residual limitations or disability associated with the injury.

D.  Analysis

i. Essential Elements of Breeland's Eighth Amendment Claim

Breeland claims that Gibbs and Wanda W. acted with deliberate indifference to his serious medical needs and thereby violated his rights under the Eighth Amendment to the Constitution. Defendants argue that the SAC fails to allege facts to support that Breeland sustained a serious medical condition or that either defendant acted with deliberate indifference to his medical needs. As discussed

4

in detail below, the defendants are correct as to both essential elements of Breeland's Eighth Amendment claim.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976) (internal quotation omitted). To state a claim for such a violation, a plaintiff must allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The first element requires the plaintiff to "make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious." *Estate of Thomas v. Fayette Cty.*, 194 F. Supp. 3d 358, 370 (W.D. Pa. 2016) (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir.2002)). The second element requires the plaintiff to make a "'subjective' showing that defendant acted with 'a sufficiently culpable state of mind.'" *Id.*

A medical need is "serious," in satisfaction of the first prong of the deliberate indifference test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir.2003). A medical need is also serious where the denial of treatment would result in the "unnecessary and wanton infliction of pain," *Estelle*, 429 U.S. at 103, 97 S.Ct. 285, or a "life-long handicap or permanent loss," *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987).

Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v.*

*Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). *See also Spruill v. Gillis*, 372 F.3d 218, 235(3d Cir. 2004) ("deliberate indifference to serious medical needs" standard may be satisfied "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'") (brackets and ellipsis in original). But "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346. Thus, "when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (*citing Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)).

    ii. The facts alleged in the SAC do not support an inference that Breeland presented with a significant medical need.

Defendants argue that the SAC fails to allege facts to demonstrate that Breeland suffered from a serious medical need or condition. Defendants are correct that the SAC provides scant information concerning the nature of Breeland's ankle injury. It discloses only that the injury or injuries resulted in significant pain and swelling for an unspecified period (ECF No. 50, ¶8) and alleges in conclusory terms that Breeland's unspecified "injuries...cannot be fixed anymore." (*Id.*, ¶27). Breeland does not allege that he suffered a fracture, dislocation or tendon damage. Rather, the few facts he does allege appear to describe a sprained ankle.

Several federal courts in this circuit and elsewhere have held that injuries like the one described by Breeland do not rise to the level of a serious medical need under Eighth Amendment jurisprudence. *See Spillman v. Kollman*, 2019 WL 4930141, at *4 (M.D. Pa. Oct. 7, 2019) (Plaintiff's "ankle sprain does not rise to the level of a serious medical need, and thus, he has not met the objective component necessary to establish a violation of the Eighth Amendment."); *Johnson v. Criminal Justice Ctr.*, 2019 WL 1754753, at *2 (E.D. Pa. Apr. 18, 2019) (holding that allegations of "a bruise and ankle sprain requiring

6

no more treatment than ice and ibuprofen" failed to support a serious medical condition under the Eighth Amendment); *Bacon v. Harder*, 248 F. App'x 759 (7th Cir. 2007) ("Bacon's ankle sprain did not constitute a serious medical need."); *Chatin v. Artuz*, 28 F. App'x. 9, 10 - 11 (2d Cir. 2001) (summary order) ("[Plaintiff]'s condition, which medical staff at various stages of his treatment diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires."); *Johnson v. Kachelmeyer*, 2006 WL 625837, at *9 (W.D.N.Y. Mar. 9, 2006) (ankle sprain with several contusions did not "r[i]se to the level of a sufficiently serious medical condition."); *Dotson v. Corr. Med. Servs.*, 584 F. Supp. 2d 1063, 1068 (W.D. Tenn. 2008) ("Plaintiff's ankle sprain does not rise to the level of a serious medical need, and, therefore, he has not met the objective component necessary to establish a violation of the Eighth Amendment.") (*aff'd sub nom. Dotson v. Phillips*, 385 F. App'x 468 (6th Cir. 2010)).

While it is conceivable that Breeland sustained more than an ankle sprain, the SAC does not so allege and, as *Twombly* instructs, the Court may not hypothesize facts to nudge Breeland's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Disregarding Breeland's unsupported conclusions regarding his injury, *Iqbal*, 556 U.S. at 678, the SAC does not allege facts upon which to infer that Breeland presented to Gibbs or Wanda W. with a serious medical need following his injury on June 1, 2017.[1] Accordingly, the SAC fails to state a viable Eighth Amendment claim against either defendant.

---

[1] The closest Breeland comes to alleging facts to support the existence of a serious medical need is his allegation that a corrections officer who observed Breeland's ankle felt its "very bad" appearance warranted immediate notification of the medical department. ECF No. 50, ¶10. However, based upon the judicial treatment of injuries similar to the one described in the SAC, and examining the totality of the allegations describing Breeland's injury, this allegation is inadequate to push the claim over to plausibility. As discussed in Section F of this Report, however, the undersigned further recommends that Breeland be granted leave to amend his pleading as he may be aware of additional facts he could plead to support the existence of a serious medical need.

   iii. The SAC also fails to allege facts to support an inference that Gibbs or Wanda W. acted with deliberate indifference to Breeland's medical needs.

Even if Breeland did present to Gibbs and Wanda W. with a serious medical need, his claim would remain appropriate for dismissal because the SAC fails to allege facts to support an inference that Gibbs or Wanda W. acted with deliberate indifference to that need. The SAC does not allege that either defendant was personally involved in Breeland's care until the evening of June 1, 2017, when they attended to him after he fell down the stairs. ECF No. 50, ¶18. Based upon the allegations of the SAC, Gibbs and Wanda W. were involved in Breeland's care for less than 24 hours following this encounter. During this relatively short period of time, Breeland was transported to the medical department, admitted to the infirmary, provided with ice, seen by a physician, given pain medication, provided an ACE bandage and crutches, and placed on a 30-day bottom bunk restriction. ECF No. 50, ¶¶19-22. While Breeland may potentially argue that more could have been done to assess his condition or reduce his discomfort, his own allegations belie an inference of deliberate indifference.

As the Court of Appeals for the Third Circuit has noted, "where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer*, 991 F.2d at 67). *See also Smith v. Bolava*, 632 F. App'x 683. 686 (3d Cir. 2015) (holding that former inmate's allegations concerning medical conditions were insufficient to state Eighth Amendment claim where inmate alleged that he received some care for each condition or symptom that he mentioned). Allegations that support an inference of simple negligence or even medical malpractice "do not trigger the protections of the Eighth Amendment." *Palakovic*, 854 F.3d at 227 (*citing Estelle*, 429 U.S. at 105-06).

"Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Id.* at 228. These circumstances include, for example, where

prison officials, "with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (*quoting West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (internal citation omitted). Similarly, prison officials may not deny reasonable requests for medical treatment when such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" *Id.* (*quoting Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (internal citation omitted), or intentionally refuse to provide care where the need for such care is acknowledged. *Id.* (*citing Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)). In the present case, however, the SAC alleges no such circumstances to support an inference that Gibbs or Wanda W.'s care fell below constitutional requirements.

Breeland's primary complaint regarding the quality of the care he received following his injury focuses on the delay between 2:30 pm, when he sustained his injury, and later that evening when he was ultimately treated in the medical department.[2] While an intentional delay in diagnosis or treatment might violate an inmate's constitutional rights, the delay in this case falls far short of triggering constitutional protections. Ultimately, "the inquiry turns on the relation between the seriousness of injury at issue and the promptness of medical care." *Visintine v. Zickefoose*, 2014 WL 4388609, at *11 (D.N.J. Sept. 5, 2014). Here, although Breeland alleges that his injury was painful, the SAC does not support a finding that the injury was serious. Nor does the SAC support an inference that either defendant intentionally or unduly delayed in providing him treatment. Short delays in treatment of nonemergency and relatively nonserious injuries such as alleged in this case cannot support a claim of deliberate indifference. *See Stewart v. Pennsylvania Dep't of Corr.*, 677 Fed. Appx. 816, 818–19 (3d Cir.

---

[2] The SAC does not attribute the initial hours of this delay directly to Gibbs or Wanda W. The SAC alleges that corrections officers contacted "medical" and relayed messages from "medical" regarding when Breeland would be seen. ECF No. 50, ¶¶12-16. Gibbs and Wanda W.'s involvement in Breeland's care is not alleged to have begun until after dinner when he fell down the stairs. *Id.*, ¶¶12-16. Nevertheless, even assuming the references to "medical" can be attributed to Gibbs or Wanda W., the minor delays in treatment described in the SAC remain inadequate to support an inference of deliberate indifference on their part.

2017) (holding that five-day delay in properly treating inmate's ankle fracture which resulted from misdiagnosis of injury as a sprain did not support a finding of deliberate indifference); *Garrett v. Wagner*, 2015 WL, 4644215, *3 (E.D. Pa. Aug. 4, 2015) (holding that any delay in receiving treatment "was *de minimis*" and not actionable where inmate ultimately "was seen the same day of his initial complaint"); *David v. Cumberland Cty. Dep't of Corr.*, 2013 WL 5503665, *11 (D.N.J. Oct. 2, 2013) (holding that "allegations of brief delays in treatment . . . cannot support a claim of constitutional magnitude and, thus, cannot give rise to a viable § 1983 cause of action"); *Douglas v. Lanier*, 2013 U.S. Dist. LEXIS 129515, 2013 WL 4876078 (M.D.Pa. Sept. 11, 2013) (where an inmate asserted that he had to wait hours until medical staff treated his urinary retention problem, the allegation of such delays was insufficient to show deliberate indifference even though the inmate claimed that he was in great pain while he waited for his treatment).

In *Gaines v. Busnardo*, 735 Fed. Appx. 799 (3d Cir. 2018) (per curium, nonprecedential) (*cert. denied*, 139 S. Ct. 2642, 204 L. Ed. 2d 288 (2019)), the Court of Appeals for the Third Circuit reversed the entry of summary judgment in favor of one of two nurses who attended to the inmate-plaintiff following an ankle injury. While the facts at issue in *Gaines* were similar to those alleged by Breeland, the *Gaines* Court's analysis ultimately supports dismissal of Breeland's claim. In *Gaines*, the incarcerated plaintiff also injured his ankle while playing basketball. He went to the institution's health unit and was examined by two nurses, one of whom told him to ice his ankle, offered him Motrin, and gave him an ACE bandage. 735 Fed. Appx. at 801. This first nurse, however, did not offer the plaintiff crutches or an ankle brace and did not put him on the list to see the doctor that week. *Id.* A few days later and still experiencing pain, the plaintiff went back to the health unit and was treated by a second nurse. She gave the plaintiff an ankle sleeve, Motrin, and put him on the doctor's list. This nurse also did not give or offer the plaintiff crutches or an ankle brace. *Id.* Ultimately, a doctor at the prison determined that the

plaintiff had ruptured his Achilles tendon, which the defendants agreed constituted a serious medical need. *Id.* at 801, 802.

The district court granted summary judgment in favor of both nurses. The Court of Appeals affirmed as to the second nurse who treated the plaintiff but reversed and remanded as to the first. Regarding the claim against the first nurse, the Court found that genuine issues of material fact remained for trial regarding whether this nurse was deliberately indifferent based upon his failure to provide the plaintiff "with crutches or an ankle brace—which might well have alleviated [plaintiff's] suffering," and his "failure to schedule [plaintiff] for an appointment with a doctor and what plaintiff describe[d] as a dismissive attitude towards his injury and pain..." *Id.* at 803.

In contrast, the Court affirmed the entry of summary judgment in favor of the second nurse on grounds specifically relevant to the pending motion to dismiss the SAC. The Court explained:

> Given [plaintiff's] description of his injury, the medical care [Nurse #2] provided to him showed that she understood that the injury was more severe than a possible twisted ankle or ankle sprain. Indeed, [Nurse #2] replaced [plaintiff's] ACE bandage with an ankle sleeve, gave him Motrin, restricted his work and recreational activities, and put his name on the list for him to meet with the doctor.
>
> While [Nurse #2's] actions were not altogether dissimilar to those of [Nurse #1], it is key that she put [plaintiff] on the list to see the doctor that week—which indicates that she, unlike [Nurse #1], necessarily viewed [plaintiff's] injury as a serious medical need.

*Id.* at 802-803.

Although it is not clear from the SAC whether Gibbs or Wanda W. arranged to have Breeland examined by the doctor, the SAC affirmatively alleges that he was so examined the following day. And, as noted, the SAC does not support an inference that Gibbs or Wanda W. were indifferent to his injury. In fact, the SAC acknowledges that following their involvement in his care, Breeland was admitted to

the infirmary, administered pain medication, and provided with ice, an ACE bandage, and crutches. Finally, unlike the record in *Gaines*, the allegations of the SAC do not support an inference that any defendant involved in the inmate's care had reason to believe that his injury was more significant than a sprain. *See Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 435–36 (E.D. Pa. 2015) (dismissing Eighth Amendment claim where "no facts pleaded to indicate that Defendants ... had knowledge or reason to know of Plaintiff's injuries or their severity before Plaintiff's roommate found him and reported his injuries").[3]

Thus, given the care the SAC acknowledges Breeland received and the absence of other factual allegations to support an inference that Gibbs or Wanda W. was deliberately indifferent to his medical need, the SAC fails to support the second essential element of Breeland's Eighth Amendment claim and is, therefore, subject to dismissal under Rule 12(b)(6).

E.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure requires that leave to amend a complaint or other pleading be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court of Appeals for the Third Circuit has instructed that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). However, the Court "need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed."

---

[3] In his brief in opposition to the motion to dismiss, Breeland appears to shift the focus of his claim from the treatment he received after he fell down the stairs to the delay in treatment following his initial injury. Breeland states that he "is not arguing about his injury he sustained while playing sports," but rather, "that he sustained more injury [when he fell down the stairs] due to medical's delay and denial of treatment." ECF No. 66, at 6. As noted above, however, the SAC attributes that delay to unidentified individuals in "medical" rather than to either Gibbs or Wanda W. ECF No. 50, ¶¶ 10-16. In the absence of any allegation that either defendant played any role in that delay, Breeland cannot sustain an Eighth Amendment claim against Gibbs or Wanda W. on that basis. In addition, he identifies no additional injury or injuries sustained in the fall down the stairs or thereafter.

*Baker v. Moon Area Sch. Dist.*, 2018 WL 40571719, at *8 (W.D. Pa. Aug. 27, 2018) (*quoting Taylor v. Pilewski*, 2008 WL 4861446, at *3 (W.D. Pa. Nov. 7, 2008)). Although Breeland has previously amended his pleading, his prior amendments were not curative amendments in response to a motion to dismiss or dismissal order. Further, because the defects in the SAC are primarily attributable to insufficient factual allegations to support the two essential elements of his claim, further amendment may not be futile. Accordingly, it is recommended that Breeland be granted leave to file a Third Amended Complaint to allow him the opportunity to cure the pleading defects identified above.

F.  Conclusion

For the reasons discussed above, it is respectfully recommended that the Court GRANT the Motion to Dismiss [ECF No. 63] filed on behalf of Defendants Gloria Gibbs and Wanda W. and dismiss Plaintiff Joseph Breeland's Second Amended Complaint [ECF No. 50] without prejudice. It is further recommended that the Court grant Breeland leave to file a further amended complaint if he wishes to attempt to cure the pleading deficiencies identified in this Report and Recommendation.

III.  Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the District Court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the Objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

Dated: January 15, 2020

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE